UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SETH DOLCE, TRIBECA CAPITAL, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DAVID PEZZOLA, ICARUS INVESTMENT ) <br> GROUP, LLC, AMERICAN STREET ) <br> CAPITAL, LLC, ) <br> ) <br> Defendants. | Case No.: 1:23-cv-10049-LGS <br><br> Jury Trial  _X_ Yes    __ No |

## SECOND AMENDED COMPLAINT

Plaintiffs, SETH DOLCE ("Dolce") and TRIBECA CAPITAL, LLC ("Tribeca") (collectively, "Plaintiffs"), by the undersigned attorneys, for their Amended Complaint against Defendants DAVID PEZZOLA ("Pezzola"), ICARUS INVESTMENT GROUP., LLC ("Icarus"), AMERICAN STREET CAPITAL, LLC ("ASC")(collectively, "Defendants") states as follows:

## PARTIES

1. At all relevant times, Plaintiff Dolce is a citizen of New York who resides at 98 Longview Road, Southampton, NY 11968.

2. At all relevant times, Plaintiff Tribeca is a citizen of New York, being a New York limited liability company with its principal place of business at 121 West 19th Street, New York, NY 10011.

3. At all relevant times, Defendant Pezzola is a citizen of Illinois, domiciled in Chicago, Illinois.

1

4. At all relevant times, Defendant Icarus is a citizen of Illinois and Wyoming, being a Wyoming limited liability company with its principal place of business at 329 W. 18th Street, Suite 905, Chicago, Illinois.

5. Upon information and belief, at all relevant times, the members of Icarus were Pezzola, Oliver Kremer, Leo Kremer, Charles Kremer, Calemeo LLC, Bergeron Capital LLC, Kinetix Asset Management LLC, and David J. Pezzola Irrevocable Trust.

6. Upon information and belief, at all relevant times, Oliver Kremer, Leo Kremer, and Charles Kremer are citizens of California, domiciled in Venice or Berkely, California.

7. Upon information and belief at all relevant times Calemeo LLC is a citizen of California, being a California limited liability company with its principal place of business at 220 Juana Avenue, San Leandro, CA 94577.

8. Upon information and belief at all relevant times, the members of Calemeo LLC are Oliver Kremer, Leo Kremer, Charles Kremer, also citizens of California.

9. Upon information and belief at all relevant times Bergeron Capital LLC is a citizen of Illinois and Delaware, being a Delaware limited liability company with its principle place of business in Chicago, Illinois.

10. Upon information and belief at all relevant times, the member of Bergeron Capital LLC is Jared Snyder.

11. Upon information and belief, at all relevant times, Jared Snyder is a citizen of Illinois, domiciled in Chicago, Illinois.

12. Upon information and belief at all relevant times Kinetix Asset Management l LLC is a citizen of Illinois, being an Illinois limited liability company with its principle place of business in Chicago, Illinois.

13. Upon information and belief at all relevant times, the member of Kinetix Asset Management LLC is Jessica Koonz.

14. Upon information and belief, at all relevant times, Jessica Koonz is a citizen of Illinois, domiciled in Chicago, Illinois.

15. At all relevant times, the David J. Pezzola Irrevocable Trust is a citizen of Illinois, domiciled in Chicago, Illinois.[1]

16. At all relevant times, Defendant ASC is a citizen of Illinois, being an Illinois limited liability company with its principle place of business at 121 W. Wacker Ave., Suite 2206, Chicago, Illinois 606010000.

17. Upon information and belief at all relevant times, the member of Defendant ASC LLC is Igor Zhizin.

18. Upon information and belief, at all relevant times Igor Zhizin, is a citizen of Illinois, domiciled at 400 N. Michigan Avenue, Unit 1016, Chicago, Illinois.

## BASIS FOR JURISDICTION

19. The basis for this court's jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332.

20. Plaintiffs are citizens of New York.

21. None of the Defendants were citizens of New York when this action was commenced.

22. The amount Plaintiff claims against each Defendant is in excess of $75,000.00.

23. Venue is proper in this court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

---

[1] It is the trustees' citizenship, not that of beneficiaries, that matters for purposes of diversity. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 721 (2d Cir. 2017)

## NATURE OF ACTION AND FACTS PERTAINING TO ALL CAUSES OF ACTION

24. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-23 as though fully set forth at length herein.

25. Plaintiff Tribeca is in the business of brokering loans for the acquisition of commercial properties, including apartment buildings.

26. Plaintiff Dolce is the principal of Tribeca.

27. Starting around spring of 2014, Dolce was introduced to Defendant Pezzola, who, at the time was starting a real estate investment company.

28. Pezzola formed Icarus to be the owner-operator of various commercial and residential properties, mostly located in Chicago, Illinois.

29. At the outset of the relationship, Dolce, through Tribeca, arranged for financing on mostly small priced residential units in the South Side of Chicago.

30. Pezzola and Icarus had been mostly unsuccessful in locating financing, other than hard money loans or alternative financing channels, and welcomed Dolce's services to source the financing, especially the re-financing of the hard money loans at reasonable interest rates after the properties had been rehabilitated and stabilized.

31. Over a period from 2014 to 2017 Dolce, through Tribeca, assisted Pezzola and Icarus in procuring multiple loans.

32. With Dolce's assistance in obtaining affordable financing, Pezzola and Icarus continued to acquire properties and eventually bought higher priced commercial properties and apartment buildings.

33. Pezzola and Icarus executed a series of at least ten Exclusive Fee Agreements whereby Tribeca was the exclusive broker for purposes of securing financing for Pezzola and Iacarus.

34. The Exclusive Fee Agreements required Pezzola, in his individual capacity, and Icarus to compensate Tribeca as follows:

    - Success Fee:   1.75% - 2% of the loan amount which Tribeca secured for Pezzola, Icarus or their affiliates[2] on specific properties as indicated on the Exclusive Fee Agreements, including repeat/subsequent financing on those properties;

    - Processing Fees: Various fees incurred by Tribeca while sourcing the financing;

    - Non-Circumvent Liability:   Pezzola and Icarus remained liable to pay the Success Fee for any financing they or their affiliates, directly or indirectly, secured on **any properties** through a Lender introduced to Pezzola and/or Icarus by Tribeca or Dolce for a period of 36 months from the date of the Exclusive Fee Agreement.

    Copies of the Exclusive Fee Agreements are attached as **Exhibit "A."**   A list of the properties that were subject to the written Exclusive Fee Agreements is attached as **Exhibit "B."**

35. From approximately, 2015 to 2017 Pezzola and Icarus complied with the terms of the Exclusive Fee Agreements and compensated Tribeca according to the terms thereof.

---

[2] Affiliates refer to "directors, partners, agents, assigns, heirs, representatives, employees, affiliates."

36. On some occasions, Exclusive Fee Agreements were not executed for specific properties or Lenders, yet Pezzola and Icarus compensated Tribeca under the same terms as the written Exclusive Fee Agreements.

37. In and around October, 2017, Pezzola and Icarus sought cross-collateralized financing for an assemblage of 27 Properties (the "Project"), a schedule of which is attached as **Exhibit "C."**

38. Pezzola and Icarus sought a loan in the sum of Forty Million and 00/100 ($40,000,000.00) Dollars in order to finance the Project.

39. After several discussions as to Tribeca's compensation for procuring the loan, Dolce and Pezzola came to an agreement that Tribeca would be entitled to a commission of anywhere between 1% to 1.5% of the total loan amount procured by Dolce, through Tribeca, for the Project.

40. Dolce, through Tribeca, introduced Pezzola and Icarus to Arbor Realty Trust, Inc. ("Arbor").

41. Tribeca performed due diligence on the Project and presented Arbor with the necessary documents and data to entice Arbor to issue the loan.

42. Through Dolce's efforts, Arbor agreed to provide Pezzola,. Icarus or their affiliates a loan in the sum of Thirty Eight Million and Seven Hundred Thousand and 00/100 ($38,700,000.00) Dollars.  A copy of the Letter of Intent ("LOI") is attached as **Exhibit "D."**

43. Emails showing Dolce's communications with Arbor pertaining to the loan for Pezzola and Iacarus, or their affiliates, are attached as **Exhibit "E."**

44. After the LOI was issued, Dolce presented Pezzola with an Exclusive Fee Agreement relative to the Project which included the agreed upon terms of compensation, a copy attached as **Exhibit "F."**

45. The Exclusive Fee Agreement memorialized the terms of the Tribeca's agreed upon compensation.

46. Dolce requested that Pezzola and Icarus execute the Exclusive Fee Agreement.

47. In reliance on the past history with Pezzola and Icarus and in light of the issuance of the LOI, Dolce arranged for a meeting with the senior loan officer at Arbor and Pezzola before receipt of the executed Exclusive Fee Agreement.

48. The meeting occurred in November, 2017.

49. The week after the meeting, Dolce received a call from the senior loan officer at Arbor stating that another brokerage firm had come to Arbor with the identical deal as the Project.

50. On November 16, 2017, Dolce received a letter from ASC stating that it was the broker on the Project with Arbor and, as a settlement, offered to pay Tribeca 25% of the commissions received by ASC, a copy attached as **Exhibit "G."**

51. Dolce and Tribeca rejected the offer.

52. Dolce learned that starting in 2018 and at various intervals thereafter, Arbor issued the loan to Icarus or its various affiliates, ultimately funding portions of the Thirty Eight Million Seven Hundred Thousand and 00/100 ($38,700,000.00) Dollar loan to Icarus or its affiliates.

53. Dolce also learned that certain properties and/or transactions that were subject to the Exclusive Fee Agreements were refinanced between 2017 and 2022.

54. Tribeca did not receive any compensation for the closed transactions with Arbor or other closed transactions subject to the Exclusive Fee Agreements even though it was entitled to them pursuant to the Exclusive Fee Agreements.

55. Tribeca did not receive any compensation for the closed transactions with Arbor or other closed transactions subject to the Exclusive Fee Agreements even though it was entitled to them pursuant to the pattern of practice and under quantum meruit.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS PEZZOLA AND ICARUS
### BREACH OF CONTRACT

56. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-55 as though fully set forth at length herein.

57. The Exclusive Fee Agreements required Pezzola and Icarus to pay Success Fees, Processing Fees and other compensation to Plaintiffs.

58. Between 2017 and 2022, Plaintiffs performed under the Exclusive Fee Agreements by procuring financing for the stated properties and/or introducing Pezzola and Icarus to lenders.

59. Pezzola, Icarus or their various affiliates utilized Plaintiff's services.

60. Pezzola, Icarus or their various affiliates benefitted from Plaintiff's services.

61. Pezzola, Icarus or their various affiliates violated the non-circumvent clause in the various Exclusive Fee Agreements by closing transactions with lenders introduced to Pezzola, Icarus or their various affiliates by Plaintiffs.

62. Pezzola, Icarus or their various affiliates violated the non-circumvent clause in the various Exclusive Fee Agreements by directly or indirectly contacting, inquiring,

soliciting or otherwise attempting to transact business with lenders introduced to Pezzola and Icarus, and their affiliates by Plaintiffs.

63. Pezzola, Icarus or their various affiliates violated the non-circumvent clause in the various Exclusive Fee Agreements within 36 months of the agreements.

64. Plaintiffs have performed all services and/or conditions precedent to the Exclusive Fee Agreements.

65. It is the contractual duty of Pezzola and Icarus to pay the compensation stated in the Exclusive Fee Agreements.

66. Although requested to do so, Pezzola and Icarus have failed to pay Plaintiffs the compensation required under the Exclusive Fee Agreements.

67. The breach of the Exclusive Fee Agreements was and is the direct and proximate cause of damage to Plaintiffs in a sum to be determined at trial, but no less than SIX MILLION and 00/100 ($6,000,000.000) DOLLARS.

68. Plaintiffs shall be entitled to pre- judgment interest pursuant to CPLR §5001.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS PEZZOLA AND ICARUS**
**UNJUST ENRICHMENT**

69. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-68 as though fully set forth at length herein.

70. As a result of Plaintiff's performance in procuring financing for Pezzola, Icarus and their affiliates and/or introducing them to lenders who financed transactions, Plaintiffs have been unjustly enriched..

71. Pezzola, Icarus and their affiliates obtained a benefit that in equity and good conscience should be paid to the Plaintiff.

72. As a direct consequence, Plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be determined at trial, but no less than SIX MILLION and 00/100 ($6,000,000.000) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS PEZZOLA AND ICARUS
### QUANTUM MERUIT

73. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-72 as though fully set forth at length herein.

74. Pezzola, Icarus and their affiliates accepted services from the Plaintiffs and the Plaintiff had a reasonable expectation of compensation from such services.

75. Plaintiffs' compensation was defined in the Exclusive Fee Agreements as well as the general pattern of practice between Plaintiffs and Pezzola and Icarus.

76. Plaintiff's compensation was reasonable for the services rendered.

77. As a direct consequence, Plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be determined at trial, but no less than SIX MILLION and 00/100 ($6,000,000.000) DOLLARS.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS PEZZOLA AND ICARUS
### CONVERSION

78. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-77 as though fully set forth at length herein.

79. Plaintiffs earned compensation from Pezzola and Icarus upon the closing of any transaction where Plaintiffs procured the funding and/or with lenders that were introduce by Plaintiffs under the pattern of practice between the parties.

80. Plaintiff had legal ownership and an immediate right of possession to the fees as they were earned.

81. Pezzola, Icarus and their affiliates exercised an unauthorized dominion over such funds to the exclusion of the Plaintiffs' rights.

82. As a direct consequence, Plaintiff has been damaged and hereby demands damages in an amount to be determined at trial, but no less than SIX MILLION and 00/100 ($6,000,000.000) DOLLARS.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS PEZZOLA AND ICARUS
### ATTORNEYS FEES

83. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-82 as though fully set forth at length herein.

84. Exclusive Fee Agreements entitled the prevailing party to recover legal fees and costs.

85. If Plaintiffs prevail in this action, Plaintiffs shall be entitled to all legal fees and costs in a sum to be determined at trial.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT AMERICAN STREET CAPITAL, LLC
### TORTIOUS INTERFERENCE WITH CONTRACT

86. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1-85 as though fully set forth at length herein.

87. Defendant ASC had actual knowledge of the Exclusive Fee Agreements between Pezzola, Icarus and Plaintiffs pertaining to sourcing financing

88. Defendant ASC had actual knowledge of the oral agreements and pattern of practice between Pezzola, Icarus and Plaintiffs pertaining to sourcing financing.

89. Defendant ASC had actual knowledge of the agreement between Pezzola, Icarus and Plaintiffs pertaining to Arbors' agreement to fund the Project.

90. Defendant ASC intentionally, knowingly and with disregard to the agreements between Pezzola, Icarus and Plaintiffs, caused Pezzola and Icarus to breach the agreements, thereby resulting in a loss of compensation and revenue to Plaintiffs.

91. But for the tortious interference with the agreements between Pezzola, Icarus and Plaintiffs, Plaintiffs would have been compensated for the services rendered in connection with the Arbor financing.

## JURY DEMAND

**92.** Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

93. Wherein Plaintiffs demand compensatory and punitive damages from the Defendants in an amount to be determined at trial plus available statutory remedies, both legal and equitable, legal fees, interests and costs.

Dated: January 28, 2025
       Smithtown, New York

Paula A. Miller
Paula A. Miller, P.C.
Attorney for Plaintiffs
SETH DOLCE and TRIBECA CAPITAL, LLC
257 East Main Street
Suite A
Smithtown, New York 11787
0 631) 979-6666
PM1414