UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                  :
  SETH DOLCE et al.,                       :
                     Plaintiffs,    :
                                    :           23 Civ. 10049 (LGS)
             -against-             :
                                    :         **OPINION & ORDER**
  DAVID PEZZOLA et al.,             :
                     Defendants. :
                                    :
-------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Seth Dolce and Tribeca Capital LLC ("Tribeca") bring this action against

Defendants David Pezzola, Icarus Investment Group, LLC ("Icarus" and, together with Pezzola,

the "Icarus Defendants") and American Street Capital, LLC ("ASC"). The Second Amended

Complaint (the "SAC"), which is the operative complaint, asserts the following claims against

the Icarus Defendants: (1) breach of contract, (2) unjust enrichment, (3) quantum meruit and

(4) conversion. The SAC also seeks contractual attorney's fees and asserts a tortious

interference claim against ASC. ASC answered the SAC. The Icarus Defendants move to

dismiss the SAC under Rules 12(b)(1), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil

Procedure. For the following reasons, the motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND

The following facts are taken from the SAC, the documents it incorporates by reference,

*see Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025), and affidavits when related to disputed

jurisdictional facts, *see Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).

In this lawsuit, Dolce and Tribeca seek compensation for assisting the Icarus Defendants

in procuring multiple loans. Tribeca is in the business of brokering loans for the acquisition of

commercial properties and is a New York limited liability company. Dolce is the principal and

sole member of Tribeca.  Icarus is a real estate investment company that owns and operates commercial and residential properties.  Pezzola formed Icarus.

From 2014 to 2017, Dolce, on behalf of Tribeca, assisted the Icarus Defendants in procuring multiple loans, enabling the Icarus Defendants to acquire or refinance the loans on various properties.  During this time, the Icarus Defendants entered into a series of fee agreements with Tribeca (the "Exclusive Fee Agreements"), each of which designates Tribeca as "exclusive agent," for a period of 180 days, to procure for the Icarus Defendants a mortgage loan secured by specified property in exchange for a fee.  Each Exclusive Fee Agreement contains a Confidentiality and Non-Circumvent Clause ("Non-Circumvent Clause").  The Non-Circumvent Clauses prohibit Icarus from transacting business with any lending source introduced by Tribeca, except through Tribeca as exclusive agent, for thirty-six months; "otherwise [the Icarus Defendants] shall be liable to [Tribeca] for the fees described above on any loan funded."  The Exclusive Fee Agreements contain New York choice of law provisions.  Some of these agreements are not signed by Tribeca.  In some instances, Tribeca and the Icarus Defendants did not execute any agreement at all, but the Icarus Defendants nevertheless compensated Tribeca according to the terms of the Exclusive Fee Agreements.

In October 2017, the Icarus Defendants sought $40 million in financing for a project that included twenty-seven properties (the "Project").  After some negotiation, Dolce and Pezzola agreed that Tribeca would receive a commission of 1% to 1.5% of the total amount of the loan that Dolce, on behalf of Tribeca, procured for the Project.  Dolce introduced the Icarus Defendants to Arbor Reality Trust, Inc. ("Arbor"), a potential lender.  Plaintiffs secured a letter of intent, dated October 23, 2017, from Arbor to the Icarus Defendants for a loan of $38.7 million.

After the letter of intent was issued, Dolce presented Pezzola with an Exclusive Fee Agreement for the Project (the "Project Agreement"). The Project Agreement lists Tribeca as "Broker" and the Icarus Defendants and three others as "Applicant," and describes Tribeca's fee in Schedule A to the Project Agreement. The other terms of the Project Agreement are substantially the same as the parties' other signed Exclusive Fee Agreements, but the Project Agreement is not signed by any party.

In November 2017, Arbor informed Dolce that another loan broker had also presented the Project to Arbor. On November 16, 2017, ASC sent Dolce a letter stating that it was the broker on the Project with Arbor and, as a settlement, offered to pay Tribeca 25% of the commission received by ASC. Plaintiffs rejected this proposal. Arbor issued the loan for $38.7 million to Icarus or its affiliates. Tribeca did not receive any compensation for procuring the Arbor loan.

Separately, Dolce learned that "certain properties and/or transactions that were subject to the Exclusive Fee Agreements" had been refinanced between 2017 and 2022, but that Icarus had not compensated Tribeca per the Non-Circumvent Clauses.

On November 14, 2023, Dolce, acting pro se, filed a Complaint against Pezzola, Icarus, ASC and other defendants. On January 8, 2024, the Complaint was dismissed for lack of subject matter jurisdiction. Dolce was permitted to amend the Complaint to eliminate any dispensable defendants as necessary to establish diversity of citizenship as the basis for subject matter jurisdiction.

On February 8, 2024, Dolce, still acting pro se, filed a First Amended Complaint against Pezzola, Icarus, ASC and other defendants. On February 21, 2024, the other defendants were dismissed for failure to state a claim. Dolce later retained counsel and filed the SAC, the operative complaint, adding Tribeca as a Plaintiff.

3

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

Movants seek to dismiss the entire case, arguing that the parties are not sufficiently diverse to confer diversity jurisdiction, which is the sole basis for federal subject matter jurisdiction in this case.  As explained below, the Court has diversity jurisdiction after Icarus, a non-diverse party, is dismissed.  Movants also challenge Dolce's claims on the basis that he lacks standing.  Dolce's claims are dismissed.

### 1.    Material Considered on Motion to Dismiss for Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction [under Rule 12(b)(1)] when the district court lacks the statutory or constitutional power to adjudicate it."[1] *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025).  "A Rule 12(b)(1) motion may be either facial or fact-based." *Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024).  "A facial motion is based solely on the pleadings -- that is, the allegations of the complaint and any exhibits attached to it." *Id.*  "Alternatively, in a fact-based motion, the defendant can proffer evidence outside the pleadings to challenge the plaintiff's allegations of standing.  In opposition to such a motion, the plaintiff will need to come forward with evidence . . . controverting that presented by the defendant if the defendant's evidence reveals the existence of factual problems regarding standing." *Id.*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted and all alterations are adopted.

4

### 2.    Diversity Jurisdiction

### i.    Icarus Is a Nondiverse Party

The SAC asserts federal subject matter jurisdiction based on diversity of citizenship.  The SAC alleges that Plaintiffs Dolce and Tribeca are citizens of New York and that the three Defendants are not citizens of New York.  The Icarus Defendants challenge that assertion and submit evidence to show that Icarus and Dolce share New York citizenship.  The Icarus Defendants are correct.

Icarus is a limited liability company ("LLC").  Its citizenship for the purpose of diversity jurisdiction therefore "depends on the citizenship of all its members."  *Windward Bora LLC v. Browne*, 110 F.4th 120, 127 (2d Cir. 2024).  "A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited liability company."  *Kruglov v. Copart of Connecticut, Inc.*, 771 F. App'x 117, 118 (2d Cir. 2019) (summary order); *accord Price v. Hale Glob.*, No. 24 Civ. 2826, 2024 WL 4555942, at *1 (S.D.N.Y. Oct. 23, 2024).  "This includes the citizenship of any members of the LLC that are themselves LLCs."  *Price*, 2024 WL 4555942, at *1.  Determining Icarus's citizenship therefore requires determining the citizenship of its members -- and those members' members -- repeated as needed until reaching natural persons or non-limited liability corporate entities.

Icarus's sole member is Pantheon Group Holdings, LLC ("Pantheon"), as sworn to by Icarus's general counsel.  Pantheon's members include Suja Associates, LLC ("Suja").  Suja's sole members are James Harris and Susan Harris, who, according to their declarations, are New York citizens.  Based on these facts, Suja, Pantheon and Icarus are all New York citizens.

5

Another member of Pantheon is Kinetix, whose sole member, Jessica Dulgerian (formerly Jessica Koonz), is a New York citizen. According to Dulgerian's declaration, Dulgerian holds a New York-issued driver's license and, since December 2015, has been a citizen of New York, has resided at the same address in New York and has paid New York income taxes. This evidence contradicts the SAC's allegation that Dulgerian is an Illinois citizen. "Where a party offers extrinsic evidence that contradicts the material allegations of the complaint . . . it would be error for the district court to disregard that extrinsic evidence." *Harty*, 28 F.4th at 442. Because Dulgerian is a New York citizen, Kinetix, Pantheon and Icarus are New York citizens.

Plaintiffs do not dispute that Pantheon is a New York citizen. Instead, Plaintiffs argue that complete diversity exists because Pantheon is not a member of Icarus. This argument is unpersuasive. Plaintiffs' own submissions -- the Pantheon Contribution Agreement and the Pantheon Operating Agreement -- corroborate that Pantheon holds all membership interests in Icarus. These documents reflect that Icarus had several members, and then, on October 6, 2023 (before the SAC was filed), those former members transferred their membership interests in Icarus to Pantheon, in exchange for membership interests in Pantheon. As a result, the transferors became members of Pantheon, and Pantheon became Icarus's only member. Additionally, Plaintiffs have not "come forward with evidence . . . controverting" the declarations of Icarus's general counsel, James Harris and Susan Harris all declaring that Pantheon is and has been the sole member of Icarus since October 6, 2023.

### ii.    Dismissing the Nondiverse Party

Despite Icarus's lack of diversity from Plaintiffs, the Court has subject matter jurisdiction because Icarus can be dismissed, leaving Pezzola and ASC as two diverse defendants.

6

Rule 21 "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)." *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 51 (2d Cir. 2011); *accord HTI Fin. Sols. Ltd. v. Manhattan SMI KG Props. Fin. Ltd.*, No. 24 Civ. 237, 2024 WL 4452295, at *4 (S.D.N.Y. Oct. 9, 2024); *see* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Rule 19(b) directs courts to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided . . . ;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result." *Am. Trucking Ass'n v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015); *accord Kasselakis v. Tiptree, Inc.*, No. 23 Civ. 2756, 2024 WL 3252632, at *13 (S.D.N.Y. July 1, 2024). In the context of contractual disputes, the Second Circuit rejects "a bright-line rule that all parties to a contract are indispensable" and requires "a flexible approach" to a Rule 19(b) analysis. *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009); *accord Chalfin v. Go Big Solar, LLC*, No. 24 Civ. 4768, 2025 WL 2022012, at *12 (S.D.N.Y. July 17, 2025). Already, the current Defendants in this action do not include several parties to the Project Agreement and several of the Exclusive Fee Agreements.

Icarus is a dispensable party. The risk of prejudice to Icarus in any parallel state court action is substantially alleviated by Pezzola's continued presence in this lawsuit and his ability to

7

"champion [Icarus's] interest[s]." *See CP Sols.*, 553 F.3d at 160. As in *CP Solutions*, the SAC does not name any action attributable only to Icarus. Both Icarus and Pezzola in his individual capacity are parties to the Exclusive Fee Agreements. All of the causes of action asserted against Icarus are also against Pezzola. Icarus and Pezzola "are represented by the same counsel," and the Icarus Defendants have not identified "any evidence that suggests [Pezzola's] and [Icarus's] interests are adverse." *Id.*; *see Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013) ("[P]rejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects.").

A judgment against Pezzola alone would be adequate. "Adequacy [in Rule 19(b)] refers to the public stake in settling disputes by wholes, whenever possible," implicating the "social interest in the efficient administration of justice and the avoidance of multiple litigation." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008). As this case has been ongoing since November 2023, "it would be far more efficient to bring the case to final judgment in federal court than to send the parties to state court for a do-over." *CP Sols.*, 553 F.3d at 160. Plaintiffs may also lack an adequate remedy if this case were dismissed, as some of Plaintiffs' claims may be time barred if filed anew. *See* Dkt. No. 54, ¶¶ 37-50 (alleging Defendants' conduct in 2017); *see* CPLR § 213(2) (requiring breach of contract claims to be filed within six years); 735 Ill. Comp. Stat. § 5/13-205 (requiring claims based on unwritten contracts to be filed within five years).

The Icarus Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Icarus, the nondiverse party, is dismissed.

8

### 3.    Standing

Dolce's declaration, sworn to on May 6, 2025, states that he is "the sole member of Tribeca" and "any damages that may be recovered in this lawsuit benefit [Dolce] and Tribeca." The Icarus Defendants argue that Dolce lacks standing to bring claims because he is neither a party to, nor a third-party beneficiary of, the Exclusive Fee Agreements between the Icarus Defendants and Tribeca. Dolce counters that he is a third-party beneficiary to the contracts. The Icarus Defendants are correct that Dolce does not have standing.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.' For a lawsuit to constitute a case within the meaning of Article III, the plaintiff must have standing to sue." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 110 (2025) (quoting U.S. CONST. art. III, § 2, cl. 1). "A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1)." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021).

To show Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact is one "that is concrete, particularized, and actual or imminent." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). "[P]laintiffs must demonstrate standing for each claim that they press." *TransUnion*, 594 U.S. at 431.

Although the SAC purportedly "allege[s] injury-in-fact -- a claim for financial loss arising from an asserted breach of contract by [Defendants] that is redressable by a judicial award of damages," *Snowbridge Advisors LLC v. Soho Square Cap. LLP*, No. 22-1054, 2023 WL 8368630, at *3 (2d Cir. Dec. 4, 2023) (summary order), that injury is insufficiently direct to confer Article III standing. "When the claim is that corporate property has been removed from the corporation, it is the corporation -- having an independent legal identity -- that must seek, on its own or derivatively, to redress its injury. The shareholder in such a case is injured only as a result of the injury to another, *i.e.*, the corporation, and therefore generally lacks standing." *Bingham v. Zolt*, 66 F.3d 553, 561-62 (2d Cir. 1995); *accord Underwood v. Lastrada Ent. Co.*, No. 16 Civ. 9058, 2021 WL 4084669, at *4 (S.D.N.Y. Sept. 8, 2021).

There appears to be no binding precedent in this Circuit that addresses whether the analysis changes when the corporation is a limited liability company and the putative plaintiff is its sole member rather than one of many shareholders. Nevertheless, persuasive authority holds that a member's indirect injury flowing from a direct injury to an LLC is not an "injury in fact" sufficient to confer Article III standing.

The Second Circuit held in a non-precedential decision that the sole member of an LLC lacked standing to assert a claim based on a usurious loan made to the LLC, stating that the claim "should have been brought" by the LLC and not its member because the Plaintiff himself had not suffered a "concrete injury." *Martin v. United Bridge Cap., LP*, No. 21-1790, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022) (summary order). In *Martin*, the Second Circuit explained that, while federal law determines the standing requirements to bring suit in federal court, "[s]tate law may supply the answers to certain antecedent questions relevant to whether those federal requirements are satisfied, particularly concerning the legal relationships between

10

people and things."  *Id.* at \*2-3.  The Court reasoned that "[b]ecause Connecticut law identifies that an LLC's members are legally distinct from the LLC and its debts, any injury suffered by [the LLC] cannot be imputed to [its member] for the purpose of establishing his standing in federal court."  *Id.* at \*3.

Other non-binding Second Circuit decisions have reached the same conclusion.  In *Fleming v. ISCO Industries, Inc.*, Douglas Fleming "[did] not sufficiently allege that he -- as opposed to Douglas P. Fleming, LLC -- suffered a concrete injury."  750 F. App'x 62, 63 (2d Cir. 2019) (summary order).  In *Ali v. New York City Environment Control Board*, the court similarly concluded that "an LLC and its owner or members are not interchangeable for the purposes of [Article III] standing."  670 F. App'x 26, 27 (2d Cir. 2016) (summary order).  District courts in this Circuit have dismissed the claims of an LLC member on the same basis. *See, e.g.*, *Powerhouse Beverage Co. v. Nahoum*, No. 22 Civ. 5559, 2024 WL 1765589, at \*2 (S.D.N.Y. Apr. 24, 2024) ("Because generally a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties, [the members] did not and cannot establish an injury-in-fact on behalf of an LLC."); *Dubois v. Maritimo Offshore Pty Ltd.*, 422 F. Supp. 3d 545, 556 (D. Conn. 2019) (holding that an owner of an LLC lacked standing to bring claims on his own behalf for injuries to the LLC because "a plaintiff may not claim standing in his own right based on the harms visited solely upon a corporate entity that he owns or controls").

The same reasoning applies here.  Under New York law, "[a] limited liability company . . . [is] a separate legal entity, the existence of which as a separate legal entity . . . continue[s] until the cancellation of the limited liability company's articles of organization." N.Y. Ltd. Liab. Co. Law § 203.  "A member has no interest in specific property of the limited

11

liability company." *Id.* § 601.  Accordingly, *Martin*'s reasoning yields the conclusion that

Dolce, the sole member of Tribeca, does not have standing to bring claims in his own right for

injuries to Tribeca.

Moreover, Dolce's additional argument that he has standing as a third-party beneficiary

to the agreements with the Icarus Defendants is incorrect as a matter of New York law.  Under

federal law, a third-party beneficiary may have constitutional standing to bring a claim in federal

court.  *Cf. Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("[T]he

assignee of a claim has standing to assert the injury in fact suffered by the assignor."); *accord*

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) ("Courts

may permit a party with standing to assign its claims to a third party, who will stand in the place

of the injured party and satisfy the constitutional requirement of an injury-in-fact.").

Nevertheless, New York state law may answer "certain antecedent questions" relevant to

the federal standing requirement.  *Martin*, 2022 WL 2166399, at *2-3.  Under New York law, to

be a third-party beneficiary, a plaintiff must establish:

> (1) the existence of a valid and binding contract between other parties, (2) that the
> contract was intended for its benefit, and (3) that the benefit to it is sufficiently
> immediate . . . to indicate the assumption by the contracting parties of a duty to
> compensate it if the benefit is lost.

*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011).  The "language of

the contract [must] clearly evidence[] an intent to permit enforcement by the third party." *Fourth*

*Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y. 1985); *accord*

*Hillside Metro Assocs. v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 49 (2d Cir. 2014)

(New York law) ("Proving third-party beneficiary status requires that the contract terms clearly

evidence an intent to permit enforcement by the third party in question.").  Here, first, the

existence of a valid and binding contract has not been established (for example, the Project

12

Agreement was not signed).  Second, though Dolce argues that he is the person who performed the services, he has not established that the Exclusive Fee Agreements or Project Agreement clearly evidence an intent for them to benefit him rather than Tribeca, a "separate legal entity" under New York law.

Because Dolce does not have Article III standing, his claims are dismissed.

## B.    Adjudication of Tribeca's Claims

The SAC adds Tribeca as a Plaintiff and asserts claims on Tribeca's behalf.  The Icarus Defendants move to dismiss Tribeca's claims on procedural and substantive grounds.  The motion is granted in part and dismissed in part as to Tribeca's claims.

### 1.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  Under Rule 12(b)(6), a court "accept[s] as true all well-pleaded factual allegations, draw[s] all reasonable inferences in the plaintiff's favor, and assess[es] the complaint to determine whether those allegations plausibly establish entitlement to relief."  *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024).  A court does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

For issues of state law, New York law governs because the Exclusive Fee Agreements include New York choice of law provisions, and the parties do not dispute that New York law

13

applies.  *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

> ### 2.    Adding Tribeca as a Plaintiff

As a threshold matter, the Icarus Defendants argue that the SAC's addition of Tribeca's claims impermissibly exceeds the scope of leave to amend granted in a December 4, 2024, conference.  This argument is unpersuasive.  As discussed below, the addition of Tribeca is proper under Rule 15(a), which governs the amendment of pleadings; Rule 20(a), which governs permissive joinder; and Rule 17(a), which governs real parties in interest.

Joinder of Tribeca is proper under Rule 15(a)(2), which states that a party may amend its pleading with the Court's leave, which should be freely given "when justice so requires."  Fed. R. Civ. P 15(a)(2).  Courts may "dismiss[] claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order).  However, such dismissals are discretionary and hinge on whether there is "bad faith, undue delay, or undue prejudice to the opposing party."  *Savor Health, LLC v. Day*, No. 10 Civ. 9798, 2022 WL 1500782, at *1 (S.D.N.Y. May 12, 2022).  Following a December 4, 2024, conference, a December 5, 2024, Order directed that "by January 28, 2025, Plaintiff shall file an Amended Complaint."  A December 23, 2024, Order added "[n]o additional parties may be joined after January 28, 2025, without leave of Court."  After retaining counsel in November 2024, Dolce filed the SAC adding Tribeca as a Plaintiff in January 2025.  The Icarus Defendants have not alleged bad faith, undue delay nor undue prejudice.  Considering these circumstances and Dolce's previous pro se status, dismissal is not warranted.

14

The addition of Tribeca as a Plaintiff is also proper under Rule 20(a), which governs permissive joinder.  Fed. R. Civ. P. 20(a).  "Rule 20 . . . prescribes permissive, not necessary, joinder and specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice."  *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970); *accord Bulgari v. Bulgari*, No. 22 Civ. 5072, 2025 WL 1558355, at *6 (S.D.N.Y. June 2, 2025).  Federal Rule of Civil Procedure 20(a)(1) authorizes permissive joinder of plaintiffs where: (a) they assert a right to relief arising out of the same transaction or occurrence and (b) the action involves common questions of law and fact applicable to all plaintiffs.  *See Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (looking to whether the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit"); *accord Bulgari*, 2025 WL 1558355, at *6.  "The rule imposes no timing mandate, and its requirements are to be interpreted liberally to enable the court to promote judicial economy." *Bulgari*, 2025 WL 1558355, at *6; *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (explaining that "joinder of claims, parties and remedies is strongly encouraged," and "the impulse [should be] toward entertaining the broadest possible scope of action consistent with fairness to the parties").

Joinder of Tribeca prevents prejudice to Plaintiffs because Tribeca, rather than Dolce, is the proper party to seek enforcement of the agreements underlying this action.  Dolce explained that, when he initially brought this action, he sued only in his own name because he did not have an attorney and had been advised (correctly) that an entity cannot proceed pro se.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 130 (2d Cir. 2011).  Joinder of Tribeca also promotes judicial economy and does not prejudice Defendants.  Tribeca's and Dolce's claims are virtually identical, and the addition of Tribeca introduces no new transactions or

claims. *See, e.g.*, *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 828 (S.D.N.Y. 2008) (holding that joinder facilitated judicial economy in a case involving identical discovery and overlap of proof used at trial); *Han v. InterExchange, Inc.*, No. 23 Civ. 7786, 2024 WL 3990770, at *10 (S.D.N.Y. Aug. 28, 2024) (same).

Joinder of Tribeca is also proper under Rule 17(a), which requires that every action be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a); *see also* Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment (discussing the importance of avoiding forfeiture of just claims and supporting relation back when amending to substitute the real party in interest). "In this Circuit, Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 226 (2d Cir. 2018). "Although the district court retains some discretion to dismiss an action where there [i]s no semblance of any reasonable basis for the naming of an incorrect party . . . there plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). "Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants." *Klein*, 906 F.3d at 218. Rule 17(a)(3) applies to both joinder and substitution. Fed. R. Civ. P. 17(a)(3) ("After ratification, joinder, or substitution [of the real party in interest], the action proceeds as if it had been originally commenced by the real party in interest."). Here, Tribeca is the real party in interest because Tribeca and not Dolce was the signatory and counterparty to the Icarus Defendants in the

Exclusive Fee Agreements.  Allowing Tribeca to press its claims does not change the substance of the action and does not prejudice Defendants, as discussed above.

The motion to dismiss Tribeca's claims as procedurally improper is denied.

### 3.    Timeliness of Tribeca's Claims

Tribeca's claims are timely because they relate back to Dolce's original Complaint, filed on November 14, 2023.  Under Federal Rule of Civil Procedure 15(c), an otherwise time-barred amendment relates back to the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Fed. R. Civ. P 15(c)(1)(B).  Notably, Rule 15(c) also applies to changes in plaintiffs. *See* Fed. R. Civ. P. 15(c) advisory committee's note to 1966 amendment ("[T]he attitude taken in . . . Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs").  Tribeca's claims are timely.

### 4.    Tribeca's Claims on the Merits

The Icarus Defendants move to dismiss Tribeca's unjust enrichment, quantum meruit and conversion claims on the grounds that they are duplicative of Tribeca's breach of contract claim. The Icarus Defendants do not move to dismiss the breach of contract cause of action for failure to state a claim.  The motion to dismiss the unjust enrichment and quantum meruit claims is denied, but the motion to dismiss the conversion claim is granted.

### i.    Unjust Enrichment and Quantum Meruit

The Icarus Defendants challenge the unjust enrichment and quantum meruit claims solely on the basis that they are duplicative because an enforceable contract governs the same subject matter.  Tribeca's unjust enrichment and quantum meruit claims may properly be pleaded in the

alternative to its breach of contract claim, because the validity and scope of the unsigned Exclusive Fee Agreements and the Project Agreement have not been established.

The Federal Rules of Civil Procedure expressly authorize pleading in the alternative. Fed. R. Civ. P. 8(a)(3), (d)(2) (noting that the demand for relief "may include relief in the alternative" and allowing for "alternative statements" in pleadings). "For this reason, courts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract." *Protex Indus. (H.K.) Ltd. v. Vince Holding Corp.*, 748 F. Supp. 3d 234, 255 (S.D.N.Y. 2024); *see, e.g.*, *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) ("[The claims] for quantum meruit and unjust enrichment . . . were properly pleaded as such in the alternative to the contractual claim of Count One.").

Tribeca may properly plead unjust enrichment claims and quantum meruit claims in the alternative to its breach of contract claim. The motion to dismiss Tribeca's unjust enrichment and quantum meruit claims is denied.

### ii.     Conversion

The SAC asserts a claim for conversion based on the Icarus Defendants' breach of the Exclusive Fee Agreements, specifically, the Non-Circumvent Clause. The conversion claim is dismissed for two reasons.

First, "[w]hile a cause of action alleging conversion cannot be predicated upon a mere breach of contract, the contracting party may also be held liable in tort where the conduct which constitutes a breach of contract also constitutes a breach of a duty distinct from, or independent

18

of, the breach of contract." *Connecticut New York Lighting Co. v. Manos Bus. Mgmt. Co., Inc.*, 98 N.Y.S.3d 101, 103 (2d Dep't 2019). The conversion claim is deficient because the SAC alleges no duty apart from the contractual duty the Icarus Defendants owed to Tribeca.

Second, to state a claim for conversion under New York law, a plaintiff must plead that the defendant "intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to [the plaintiff], interfering with [the plaintiff's] right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006). However, "[a]n action for conversion under New York law is insufficient as a matter of law unless it is alleged that the money converted was in specific funds of which claimant was the owner and entitled to immediate possession." *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 196 (2d Cir. 2023); *accord Fam. Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 50 (1st Dep't 2022). Tribeca's conversion claim is based on its "legal ownership and an immediate right of possession to the fees as they were earned" and the Icarus Defendants' "exercis[ing] an unauthorized dominion over such funds to the exclusion of the Plaintiffs' rights." *See* Dkt. No. 54 ¶¶ 80-81. This pleading is insufficient. The SAC does not allege any facts showing that the funds allegedly owed by the Icarus Defendants to Tribeca "were segregated or otherwise specifically identifiable as [Tribeca's] money, or that [the Icarus Defendants] exercised an unauthorized 'dominion' over any segregated [broker] payments." *Rynasko*, 63 F.4th at 196. The conversion claim is dismissed.

## III.    CONCLUSION

For the reasons stated above, the Icarus Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Defendant Icarus is dismissed. Plaintiff Dolce and Dolce's claims

are dismissed.  Tribeca's conversion claim is dismissed.  Tribeca's breach of contract, unjust enrichment and quantum meruit claims survive.

The Clerk of Court is respectfully directed to terminate Icarus as a Defendant and Dolce as a Plaintiff and close the motion at Dkt. No. 70.

Dated:  December 17, 2025
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

20