SFBBG
Schoenberg | Finkel | Beederman | Bell | Glazer LLC

**Dean C. Kalant**
Attorney At Law

300 S. Wacker Drive
Suite 1500
Chicago, IL 60606
T 312.648.2300, Ext. 133
D 312.775.3638
C 312.259.8398
F 312.648.1212
E dean.kalant@sfbbg.com

May 18, 2026

**VIA ECF**
Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1106
New York, New York 10007

Re: ***Tribeca Capital, LLC v. David Pezzola, et al.*; Case No. 23-cv-10049-LGS**

Dear Judge Schofield:

Defendant David Pezzola ("Pezzola") submits this pre-motion letter: (1) in response to Plaintiff Tribeca Capital, LLC's ("Plaintiff") letter motion to reopen this case (ECF 147); and (2) to request leave to file a motion to enforce the parties' settlement agreement.

On February 20, 2026, the parties jointly advised the Court they had "reached a settlement in principle to resolve all pending claims in this action" and requested a stay so the settlement could be memorialized in writing. (ECF 134.) By that point, the parties had already agreed upon the settlement payment amount, which Plaintiff's then-counsel, Paula Miller, never thereafter identified as unresolved. The settlement consisted of two coordinated agreements: a Settlement Agreement and Mutual General Release (the "Party Agreement") governing claims among Plaintiff, Pezzola, Defendant American Street Capital, Seth Dolce and Icarus Investment, LLC, and a separate Third-Party Mutual Release Agreement between Plaintiff, Dolce and numerous third parties allegedly involved in the transactions at issue (the "Third-Party Agreement"). Based on the settlement in principle, the Court dismissed the action, with leave to reinstate. (ECF 135.)

Following the February 20 submission, counsel exchanged drafts and revisions. On March 20, 2026, Ms. Miller again advised the Court that "the parties reached a settlement in principle," that drafts had been circulated, and they were "close to working out a mutually agreeable solution." (ECF 136, p. 1.) The settlement amount was not one of those topics.

By late March, the parties had resolved all material settlement terms, including: (1) settlement payment amount; (2) dismissal with prejudice; (3) mutual releases; and (4) the third-party release structure. (Ex. 1 and Ex. 2.) Throughout the final negotiations, Ms. Miller

repeatedly confirmed that the only remaining discussion concerned wording of the confidentiality provision. (Ex. 1 and Ex. 2.) On March 25, 2026, Ms. Miller instructed Pezzola's counsel to "[p]lease start circulating" the Third-Party Agreements because "[t]hey are acceptable." (Ex. 1.) Pezzola then obtained signatures from all but one third-party whose signature is unnecessary to enforce the agreement.[1]

On April 2, 2026, Pezzola proposed revised confidentiality language addressing Plaintiff's concerns. The next day, Ms. Miller moved to withdraw. (ECF 141.) Only after new counsel appeared did Plaintiff express dissatisfaction with the settlement, not because of any unresolved confidentiality or release language, but solely to renegotiate the settlement amount already agreed upon. (ECF 147.) That effort does not negate the existence of a binding settlement.

**The Settlement Agreement Should Be Enforced**

Courts have clear authority to enforce settlement agreements reached in pending litigation. *Meetings & Expositions, Inc. v. Tandy Corp*., 490 F.2d 714, 717 (2d Cir. 1974). A party's "subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005). Courts evaluate the following factors to determine whether to enforce an agreement, whether: (1) there exists an express reservation of the right not to be bound absent a writing; (2) there has been partial performance; (3) all material terms have been agreed upon; and (4) the agreement is of the type usually committed to writing. *Winston v. Mediafare Ent. Corp*., 777 F.2d 78, 81 (2d Cir. 1985). Those factors support enforcement.

First, although Ms. Miller stated on February 20, 2025 that Pezzola's deposition was canceled "subject to executing mutually agreeable settlement documents," no party conditioned settlement itself on execution of final papers. Rather, the parties jointly informed the Court they had reached a settlement in principle resolving all claims.

Second, the parties substantially performed. Litigation was stayed, discovery ceased, settlement documents were agreed upon, and Pezzola circulated the Third-Party Agreement and obtained signatures.

Third, all material terms were agreed upon, including the settlement amount. By February 20, 2026, the parties had negotiated the settlement payment and jointly advised the Court they had reached a settlement in principle. Thereafter, Ms. Miller consistently represented that the only remaining issue concerned wording of the confidentiality provision. Plaintiff's current position effectively concedes confidentiality was not material: its motion letter nowhere identifies confidentiality language as an impediment to settlement, objects to Pezzola's proposed revisions, or claims the parties failed to reach agreement because of confidentiality wording.

---

[1] The Third-Party Agreement states that any third-party who does not sign does not receive any release, rights, benefits or protections under the agreement.

SFBBG
Schoenberg | Finkel | Beederman | Bell | Glazer LLC



Instead, only after new counsel appeared did Plaintiff attempt to revisit the settlement payment agreed upon months earlier. That is not evidence of an incomplete agreement, but merely an effort to renegotiate one already reached.

Nor can Plaintiff rely on the confidentiality drafting discussion to avoid enforcement. Courts in this District routinely reject attempts to use unresolved drafting language as an "escape hatch" from an otherwise binding settlement. *Chang v. CK Tours, Inc.*, 605 F. Supp. 3d 529, 540-41 (S.D.N.Y. 2022); *Emile v. Ethical Culture Fieldston Sch.*, 2024 WL 1216473, at *2-3 (S.D.N.Y. Mar. 21, 2024).

Finally, although settlements are generally reduced to writing, that factor alone is insufficient where the parties objectively manifested assent to the material terms. *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007).

**Plaintiff's Counsel Possessed Apparent Authority to Negotiate and Bind Plaintiff**

Plaintiff's argument that Ms. Miller lacked authority fares no better. Courts "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Villar v. City of N.Y.*, 546 F. Supp. 3d 280, 286 (S.D.N.Y. 2021). The burden to prove otherwise is "not insubstantial." *U.S. v. Int'l Board of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993). Because of the strong public policy favoring settlements, an attorney of record is presumed to have authority to settle on a client's behalf, and the party challenging that authority bears the burden of proving otherwise with affirmative evidence. *Rahman v. Kaplan Cornelia*, Inc., No. 12 Civ. 09095, 2014 WL 541851, at *8 (S.D.N.Y. Feb. 11, 2014).

Plaintiff has offered no evidence that Ms. Miller lacked authority, nor can it. Throughout negotiations, Ms. Miller represented that she was communicating with Plaintiff regarding settlement terms.[2] She twice advised the Court that the matter had settled and that documentation was being finalized. Plaintiff itself never advised Pezzola that Ms. Miller lacked or had limited settlement authority and instead permitted her to act as its settlement representative throughout negotiations. Pezzola was entitled to rely on her representations. *See Villar*, 546 F. Supp. 3d at 288-89 (an attorney generally possesses apparent authority to settle and a principal's silence can establish apparent authority). Critically, Plaintiff's challenge to Ms. Miller's authority arose only after new counsel appeared and sought to renegotiate the agreed settlement payment. That attempted repudiation does not undo the parties' manifested agreement. "A client's subsequent change of heart is legally irrelevant." *Id.* at 289.

For these reasons, Pezzola respectfully requests that the Court deny Plaintiff's motion to reopen the case and instead enforce the parties' settlement agreement.[3] Also, pursuant to the

---

[2] Copies of such communications can be provided upon request.

[3] Should the Court consider Ms. Miller's actual authority, Pezzola requests production of Plaintiff's settlement communications with Ms. Miller.

SFBBG
Schoenberg | Finkel | Beederman | Bell | Glazer LLC



prevailing-party fee provision in the Party Agreement, Pezzola intends to file a letter motion to recover his reasonable attorneys' fees, costs, and expenses incurred in defending Plaintiff's attempt to reopen this action.

Sincerely,

/s/ *Dean C. Kalant*
Dean C. Kalant

Encl.

cc: Counsel of Record (via ECF notification)

The request for leave to file a Motion to Enforce is **GRANTED**.

- By **June 12, 2026**, Defendants shall file their Motion to Enforce, including any further opposition to the pending Motion to Reopen (Dkt. 147).
- By **July 6, 2026**, Plaintiff shall file its opposition to the Motion to Enforce and any further evidence or argument in support of the Motion to Reopen (Dkt. 147).
- By **July 20, 2026**, Defendants shall file their reply.

The parties shall refer to the Individual Rules and Local Rules for page limits and formatting requirements.

The Clerk of Court is respectfully directed to close the motion at Dkt. 152.

Dated: May 22, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE